1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2     Including Professional Corporations
   CHRISTOPHER VAN GUNDY, Cal. Bar No. 152359
3  MICHAEL A. LUNDHOLM, Cal. Bar No. 336151
   Four Embarcadero Center, 17th Floor
4  San Francisco, California 94111-4109
   Telephone:    415.434.9100
5  Facsimile:    415.434.3947
   E mail        cvangundy@sheppardmullin.com
6                mlundholm@sheppardmullin.com

7  Attorneys for Blue Sun Marketing, Inc., a
   California corporation
8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                        OAKLAND DIVISION

12

| | |
|---|---|
| Blue Sun Marketing, Inc., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>Utz Brands, Inc., a Delaware corporation, and Utz Quality Foods, LLC, a Pennsylvania limited liability company.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF**<br><br>JURY TRIAL DEMANDED |

COMES NOW Plaintiff Blue Sun Marketing, Inc., and for its Complaint against Defendants Utz Brands, Inc., a Delaware corporation and Utz Quality Foods, LLC, a Pennsylvania limited liability company, alleges as follows:

**THE PARTIES**

1. Plaintiff Blue Sun Marketing, Inc. ("Blue Sun" or "Plaintiff") is a California corporation with its principal place of business at 700 Hartz Avenue, Suite 200, Danville, California 94526, and is therefore a citizen of the State of California. Blue Sun brokers food products into club stores such as Costco Wholesale, Inc. ("Costco"), by identifying, facilitating and servicing sales opportunities for its food manufacturing and distribution clients on a commission basis. One such client was R.W. Garcia Co., Inc. ("RW Garcia"), a manufacturer of snack foods, incorporated in Nevada with its principal place of business at 100 Enterprise Way, Scotts Valley, CA 95066.

2. Defendant Utz Brands, Inc. is a Delaware corporation with its principal place of business at 900 High Street, Hanover, PA 17331 and is therefore a citizen of the States of Delaware and Pennsylvania, but not California. Defendant Utz Quality Foods, LLC is an affiliate of Utz Brands, Inc., formed in Pennsylvania as limited liability company with its principal place of business at 900 High Street, Hanover, PA 17331, and is therefore a citizen of the State of Pennsylvania, but not California. Utz Brands, Inc. and Utz Quality Foods, LLC are referenced collectively herein as "Utz."

3. On information and belief, sometime in the first half of 2022, Utz Brands, Inc. through its subsidiaries completed the acquisition of RW Garcia and any of its affiliates. This acquisition included a manufacturing facility in California that RW Garcia owned or leased.

**JURISDICTION AND VENUE**

4. This Court has diversity subject matter jurisdiction over this matter pursuant to 28 U.S.C. Section 1332(a) and (c) because Plaintiff is not a citizen of any State of which any Defendant is a citizen, and the amount in controversy exceeds $75,000, excluding interest and costs. Utz could reasonably foresee being haled into California courts because, as explained

below, it took over management of the contract between its subsidiary, RW Garcia, a California citizen and Blue Sun, and instructed Blue Sun thereafter to communicate with Utz personnel.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391 because a substantial part of the events or omissions giving rise to the claims made herein occurred in this District, as more fully explained elsewhere herein. Defendant's interference with Plaintiff's contract with RW Garcia, breach of Plaintiff's prospective economic advantage, and other wrongs set forth herein, caused harm in California.

## FACTUAL ALLEGATIONS

6. Blue Sun is an independent wholesale sales representative pursuant to Section 1738.12 of the California Civil Code ("Section 1738.12"), by contracting with its clients, for a commission, to sell their food products into major retail club stores like Costco. Specifically, Blue Sun assists food manufacturers and distributors in the promotion and sale of their products into retail club stores, managing promotional programs like in-store sampling, advising as to pricing and product development, and answering questions and resolving issues from various club store regional buyers, to name a few. For these services, Blue Sun charges its customers commissions based on the percentage of the dollar net sales of all orders placed within a given month.

7. Since 1921, Utz has manufactured, marketed and distributed snack foods throughout the United States. Utz is a publicly traded company with reported sales of $1.2 billion for 2021. On information or belief, in or about the first quarter of 2022, Utz completed the acquisition of RW Garcia, including control and/or ownership of the RW Garcia snack manufacturing facility located in California.

8. In or about September 10, 2018, Blue Sun and RW Garcia entered into a written "Club Store Brokerage Agreement" (the "Agreement"). RW Garcia drafted the Agreement, and in fact the Agreement was printed on RW Garcia letterhead. Pursuant to this Agreement, Blue Sun was to act as the exclusive broker for all sales of certain RW Garcia products within a specific territory.

9. This territory was defined as Costco Wholesale USA, Costco Wholesale Australia, and Costco E-commerce in the United States. Blue Sun was to receive a 4.25% commission on

"the total amount of net sales" by the 30th day of the following month in which the sales were made. "Net sales" was defined as the "[s]upplier sales price of the Product to Retailer, less any discounts, demo accruals, endcaps, TPD promotions, sales tax, shipping, returns, and any marketing promotions given to Retailer at point of sale."

10. When entering into the Agreement, Blue Sun and RW Garcia discussed the fact that the sales price reductions by RW Garcia for any MVM program would not be deducted to arrive at "net sales" for calculating commissions. "MVM" stands for "multi-vendor mailing," and is a popular coupon book that Costco distributes to promote certain products at a low introductory price for a definite period of time. The definition of "net sales" in the Agreement does not mention a deduction for MVM programs, and the Agreement does not contain an integration clause barring extrinsic evidence of contract terms.

11. Implementing an MVM program involved a significant time commitment by Blue Sun on behalf of its clients (and Costco) extending over many weeks to arrange for the program and execute on it. An agreement by Costco and its suppliers to an MVM program legally obligated Costco and the supplier to the purchase and sale of a certain volume of product at certain prices during the MVM program time period. Blue Sun would not have agreed to expend the time to put together the 2021 and 2022 MVM programs if its commissions were going to be substantially reduced by including MVM deductions within the definition of "net sales" in the Agreement.

12. Since the inception of the Agreement, Blue Sun performed all obligations on its part without any significant complaints from RW Garcia. Blue Sun successfully promoted and serviced the sale of RW Garcia product into Costco. For its part, RW Garcia was chronically late with commission payments contrary to the terms of the Agreement and Section 1738.15 of the California Civil Code, and failed to provide Blue Sun with a sufficient written accounting of commissions in accordance with Section 1738.13 of the California Civil Code.

13. In addition, RW Garcia failed to pay Blue Sun the full commission owed on the net sales for the 2021 MVM program. Blue Sun accepted payment at a lesser commission rate with reservation of rights on the understanding that the MVM deduction would not be taken from "net

sales" when calculating commission payments.  Based on an audit later (and untimely) provided to Blue Sun by Utz, Blue Sun learned that RW Garcia in fact paid a lesser commission rate on net sales after taking the MVM deduction and contrary to the Agreement.

14. Sometime in or about the first quarter or half of 2022, on information and belief, Utz asserted control over RW Garcia management by making certain corporate decisions for RW Garcia after its acquisition.  Utz, for example, informed Blue Sun that Blue Sun henceforth should look to Utz personnel for communications and direction regarding RW Garcia matters.  Thus, Utz either on its own or in concert with RW Garcia took over the management and control of the administration of the Agreement, including what commissions were owed and to be paid, and what sales would be made and on what terms.

15. In or about May 2022, Utz directed RW Garcia, or ratified RW Garcia's decision, wrongfully to cancel the 2022 MVM program to which executive management at Costco had already committed.  Specifically, Costco had agreed to a certain amount of organic chip sales for the August 2022 MVM program, which was binding on Costco (and RW Garcia) and in line with the prior 2021 MVM sales commitments.  The excuse for canceling the 2022 MVM was that the organic oil was in short supply due to the war in Ukraine, but Utz/RW Garcia was able to sell product with organic oil at the same time into Sam's Club.

16. In any event, the Agreement does not contain a "force majeure" clause that would excuse RW Garcia's performance in this regard.

17. The real reason for terminating the 2022 MVM program was that Utz wanted to use the RW Garcia production lines for other food products and/or did not want to commit to the deep discounts of an MVM program.  The breach of the commitment to the 2022 MVM program by Utz/RW Garcia to Costco Blue Sun did not relieve RW Garcia of the obligation to pay Blue Sun its commission on the expected net sales.  Utz's cancellation of the 2022 MVM program proximately caused damage to Blue Sun because Blue Sun was entitled to the reasonably anticipated commissions on net sales regardless of whether RW Garcia ultimately supplied product under the 2022 MVM program agreed to by it and Costco.

18.     After its audit of the Blue Sun account, Utz could have required RW Garcia to pay the full amount of commissions owing to Blue Sun for the 2021 and 2022 MVM programs, but refused to do so.

19.     Pursuant to Section 1738.15 of the California Civil Procedure Code, Blue Sun is entitled to treble the amount of commissions it otherwise would have earned had Utz not induced a breach of the Agreement, or interfered with RW Garcia's administration of the Agreement.

## FIRST CLAIM FOR RELIEF

### (Inducement Of Breach Of Contract)

20.     Plaintiff hereby repeats, re-alleges, adopts, and incorporates paragraphs above and below as though fully set forth herein.

21.     The Agreement was a valid and binding contract between Blue Sun and RW Garcia.

22.     Utz knew of the Agreement at the time it acquired RW Garcia.

23.     Utz intended to cause and did cause, RW Garcia to breach the Agreement in the first instance by ensuring that RW Garcia canceled the 2022 MVM program and for that reason failed or refused to pay Blue Sun commissions on the expected sales arising out of the 2022 MVM program.  The 2022 MVM program contractually obligated both Costco and RW Garcia for the purchase and sale of an anticipated volume of products to be sold under the 2022 MVM program. RW Garcia's failure or refusal to supply product for sales agreed to by Costco as part of the 2022 MVM program did not absolve RW Garcia from the obligation to pay Blue Sun a commission for its work in obtaining Costco's agreement to purchase a certain volume of product.

24.     Also, Utz intended to cause, and did cause, RW Garcia to breach the Agreement by inducing RW Garcia to fail to pay Blue Sun the full commission due and owing Blue Sun on the 2021 MVM program.  At some point, Utz conducted an audit of the commissions paid to Blue Sun under the Agreement and became aware of the fact that the commission on the 2021 MVM program was paid on net sales calculated after taking the MVM deduction and contrary to the terms and conditions of the Agreement.  The Agreement did not provide for an MVM deduction to arrive at a net sales figure to calculate commissions, thereby wrongly reducing the commissions

paid to Blue Sun. As the ultimate sole owner of RW Garcia and the self-appointed administrator of the Agreement for RW Garcia, Utz could have required RW Garcia to pay the additional commissions due and owing Blue Sun, but chose not to do so.

25. Utz's inducement of RW Garcia to cancel the 2022 MVM program and subsequent failure or refusal to pay commissions for the expected sales, and to pay Blue Sun the full commissions due and owing it under the Agreement for the 2021 MVM program, also were in violation of Section 1738.15 of the California Civil Code ("Section 1738.15").

26. Blue Sun was harmed by Utz's inducement of RW Garcia's breach of the Agreement as further detailed herein for the unpaid commissions on the 2022 and 2021 MVM programs, among other unpaid commissions that Blue Sun's investigations may reveal.

27. As a direct and proximate result of Utz's inducement for RW Garcia to breach the Agreement, Utz was a substantial factor causing Blue Sun to suffer damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

**(Intentional Interference With Contractual Relations)**

28. Plaintiff hereby repeats, re-alleges, adopts, and incorporates paragraphs above and below as though fully set forth herein.

29. The Agreement was a valid and binding contract between Blue Sun and RW Garcia. The Agreement was not at will because it was for an indefinite term.

30. Utz knew of the Agreement at the time it acquired RW Garcia.

31. Utz's conduct prevented in material part RW Garcia's performance of its obligations under the Agreement because at some point Utz took over the administration of the Agreement and decided that RW Garcia would not pay Blue Sun the full commissions due and owing under the Agreement for the 2022 and 2021 MVM programs.

32. Utz knew that its decision to cancel the 2022 MVM program thus depriving Blue Sun of commissions it could reasonably anticipate, and not to pay Blue Sun the full commissions due and owing on the 2021 MVM program, would disrupt RW Garcia's performance under the

Agreement, and/or knew that disruption of RW Garcia's performance under the Agreement was certain or substantially certain to occur.

33. Utz's actions were independently wrongful because it induced RW Garcia to breach the Agreement without cause and in violation of Section 1738.15.

34. Blue Sun was harmed by Utz's interference with the Agreement between Blue Sun and RW Garcia in terms of lost commissions on the 2022 and 2021 MVM programs, among potentially other lost commissions.

35. As a direct and proximate result of its intentional interference with contractual relations, Utz was a substantial factor causing Blue Sun to suffer damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

**(Intentional Interference With Prospective Economic Advantage)**

36. Plaintiff hereby repeats, re-alleges, adopts, and incorporates paragraphs above and below as though fully set forth herein.

37. Blue Sun and RW Garcia were in an economic relationship that probably would have resulted in an economic benefit to Blue Sun. These benefits for Blue Sun included the value of the commissions reasonably anticipated on the sales volumes to which Costco and RW Garcia agreed for the 2022 MVM program that Utz canceled, and the payment of the full commission due and owing on the 2021 MVM program.

38. Utz knew that Blue Sun was in an economic relationship with RW Garcia.

39. Utz's cancellation of the 2022 MVM program with the concomitant loss of anticipated commission payments, and refusal to pay, or permit RW Garcia to pay, the full commission due and owing Blue Sun from the 2021 MVM program, were independently wrongful as violations of Section 1738.15.

40. By engaging in this conduct, Utz intended to disrupt or knew that disruption of the relationship was certain or substantially certain to occur regarding Blue Sun's relationship with RW Garcia.

41. Blue Sun's relationship with RW Garcia in fact was disrupted, because Utz cancelled the 2022 MVM program, or required RW Garcia to cancel, which program would have generated significant commission payments to Blue Sun, and refused to pay, or permit RW Garcia to pay, the full commission due and owing Blue Sun on the 2021 MVM program.

42. Blue Sun was thus harmed in the form of unpaid commissions where Utz knowingly assumed administration of the Agreement to cancel the 2022 MVM program and associated anticipated commission payments, or required RW Garcia to do the same, and to refuse to pay, or not permit RW Garcia to pay, Blue Sun its full commission on the 2021 MVM programs.

43. As a direct and proximate result of its intentional interference with prospective economic advantage, Utz was a substantial factor causing Blue Sun to suffer damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

**(Negligent Interference With Prospective Economic Advantage)**

44. Plaintiff hereby repeats, re-alleges, adopts, and incorporates paragraphs above and below as though fully set forth herein.

45. Blue Sun and RW Garcia were in an economic relationship that probably would have resulted in an economic benefit to Blue Sun. These benefits for Blue Sun included the value of the commissions reasonably anticipated on the sales volumes to which Costco and RW Garcia agreed for the 2022 MVM program that Utz canceled, and the payment of the full commission due and owing on the 2021 MVM program.

46. Utz knew that Blue Sun was in an economic relationship with RW Garcia.

47. Utz's cancellation of the 2022 MVM program with the concomitant loss of anticipated net sales and commission payments, and refusal to pay, or permit RW Garcia to pay, the full commission due and owing Blue Sun from the 2021 MVM program, were independently wrongful as violations of Section 1738.15.

48. Utz knew or should have known that its conduct regarding the 2022 and 2021 MVM programs would disrupt the economic relationship between Blue Sun and RW Garcia.

49. Utz failed to act with reasonable care by erroneously assuming or concluding that: it could cancel, or require RW Garcia legally to cancel the 2022 MVM program, and thereby deprive Blue Sun of the anticipated commissions; and it could legally refuse to pay or prevent RW Garcia from paying the additional commissions due and owing Blue Sun on the 2021 MVM program.

50. Blue Sun's relationship with RW Garcia in fact was disrupted, because Utz cancelled the 2022 MVM program that would have generated significant commission payments to Blue Sun, and refused to pay, or permit RW Garcia to pay, the full commission due and owing Blue Sun on the 2021 MVM program.

51. Blue Sun was thus harmed in the form of unpaid commissions where Utz assumed administration of the Agreement and negligently decided to cancel, or required RW Garcia to cancel, the 2022 MVM program that consequently deprived Blue Sun of those anticipated commissions, and negligently decided not to pay, or refused to permit RW Garcia to pay, Blue Sun its full commission on the 2021 MVM programs.

52. As a direct and proximate result of its negligent interference with prospective economic advantage, Utz was a substantial factor causing Blue Sun to suffer damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Violation of Unfair Competition Act)
### (Cal. Bus. & Prof. Code Section 17200)

53. Plaintiff hereby repeats, re-alleges, adopts, and incorporates paragraphs above and below as though fully set forth herein.

54. Utz's conduct as more fully described herein constitutes unfair competition within the meaning of Section 17200 of the California Business and Professions Code in that such acts constituted violations of numerous laws, and otherwise were unfair, unlawful and/or fraudulent. Such acts proximately caused Blue Sun harm, including lost commission payments and future business opportunities as otherwise described herein, entitling Blue Sun to restitution, injunctive relief, attorney's fees, and such other further relief as provided by law.

55. By reason of Utz's acts, Blue Sun has suffered, and will continue to suffer irreparable harm for which Plaintiff have no adequate remedy at law, unless and until restitution and/or injunctive relief is provided to Blue Sun for Utz's wrongdoing.

### SIXTH CAUSE OF ACTION

### (Punitive Damages)

56. Plaintiff hereby repeats, re-alleges, adopts, and incorporates paragraphs above and below as though fully set forth herein.

57. Utz's conduct justifies an award of punitive damages because it is despicable, repeated and vile.  Utz should be punished for its wrongful conduct as an example to other participants in the food business similarly inclined to engage in such despicable conduct.  Utz acted willfully and maliciously because it acted with a purpose or willingness to commit, or to engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith, including, but not limited to, disrupting Blue Sun's business relationships and depriving Blue Sun of commissions it was reasonably anticipated to earn.  Furthermore, Utz acted with an intent to cause injury such that its conduct was despicable and was done with a willful and knowing disregard for the rights of Blue Sun.  Utz's conduct was so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.

58. This conduct constituting malice, oppression, and/or fraud was committed by one or more officers, directors, controlling shareholders, members, or managing agents of Utz, who acted on behalf of Utz; and/or one or more officers, directors, controlling shareholders, members, or managing agents of Utz knew of this conduct and adopted or approved of it after the conduct occurred.

SMRH:4873-5104-7238.1                                                                                           COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, as follows:

1. That the Court enter judgment in favor of Plaintiff and against Defendant, and each of them, on all counts;

2. For compensatory, incidental, consequential and punitive damages, in the maximum amount provided by law, arising from Defendant's violations of Plaintiff's rights;

3. For restitution and/or disgorgement of Defendant's profits to Plaintiff;

4. For declaratory and injunctive relief;

5. For pre-judgment and post-judgment interest;

6. For the costs of suit incurred herein;

7. For attorneys' fees and costs incurred in this action; and

8. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Blue Sun Marketing, Inc. hereby demands a jury trial on all issues triable to a jury.

Dated: February 15, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
CHRISTOPHER VAN GUNDY
MICHAEL A. LUNDHOLM

Attorneys for Blue Sun Marketing, Inc.